U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED  10-17-2018
WILLIAM W. BLEVINS
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 18-138 |
| v. | * | SECTION: I |
| STEPHANIE NICOLE FREE | * | |
| | * * * | |

## FACTUAL BASIS

Should this matter have gone to trial, the government would have proved through the introduction of competent testimony and admissible tangible exhibits, including documentary evidence, the following to support the allegations charged by the government in the indictment now pending against the defendant, **STEPHANIE NICOLE FREE**, charging her with a violation of Title 21, United States Code, Sections 846, 843(a)(3), 841(a)(1), 841(b)(1)(C), namely, conspiracy to acquire or obtain possession of oxycodone by fraud and to possess with the intent to distribute, and to distribute controlled substances, namely oxycodone.

1. The Controlled Substances Act ("CSA"), Title 21, United States Code, Section 801, *et seq.*, and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances." Those controlled substances are then assigned to one of five schedules – Schedule I, II, III, IV, or V – depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision. A substance listed on Schedule I has a higher abuse potential than a substance on Schedule II. The abuse potential decreases as the Schedule numbers increase. Schedule II drugs or substances have some accepted medical use, but with severe restrictions, and

DOJ Trial Attorney ____
Defendant ____
Defense Counsel ____

have a high potential for abuse, with use potentially leading to severe psychological or physical dependence. These drugs are also considered dangerous, and abuse can lead to addiction, overdose, and sometimes death.

2. Oxycodone is classified as a Schedule II controlled substance. Oxycodone is the generic name for a highly addictive prescription analgesic. The use of oxycodone in any form can lead to physical and/or psychological dependence, and abuse of the drug may result in addiction. Oxycodone is sold generically or under a variety of brand names, including OxyContin and Roxicodone.

3. The defendant, a resident of St. Tammany Parish, Louisiana, was introduced to Danielle Lesslie for the purpose of having Lesslie create a fraudulent prescription for oxycodone that the defendant would then fill. The defendant supplied Lesslie with her personal identifying information (name, date of birth, telephone number) ("PII") so that Lesslie could create a fraudulent prescription for oxycodone for the defendant using a prescription template that had been stolen from an area physician ("Physician 1").

4. On or before July 13, 2017, for the specific purpose of creating a fictitious prescription for oxycodone, the defendant provided to Lesslie her PII. Lesslie used the defendant's PII to create a fraudulent prescription purportedly authorized by Physician 1 prescribing 60 30 mg pills of oxycodone. In actuality, the defendant had never been examined by Physician 1, nor had she ever been a patient of Physician 1.

5. On or about July 13, 2017, at a pharmacy located in the Eastern District of Louisiana, the defendant filled the fraudulent prescription previously created by Lesslie and purportedly authorized by Physician 1. Upon the pharmacy dispensing the pills to the defendant, the defendant, in turn, provided a portion of the oxycodone pills to Lesslie and kept the remainder

2

DOJ Trial Attorney
Defendant
Defense Counsel

for herself.

6. Over the course of her dealings with Lesslie, the defendant learned that she could refer other co-conspirators to Lesslie to fill fraudulent prescriptions for oxycodone that would later be sold on the black market.

7. Beginning in or around February 2017, and continuing through in or around September 2017, the defendant referred another co-conspirator ("Co-Conspirator C.V.") to Lesslie. Co-Conspirator C.V. provided his/her PII to Lesslie so that Lesslie could create a fraudulent prescription for oxycodone for Co-Conspirator C.V. On or about April 24, 2017 and May 24, 2017, Lesslie created fraudulent prescriptions for oxycodone for Co-Conspirator C.V. using the stolen prescription template from Physician 1. Co-Conspirator C.V. filled these prescriptions at pharmacies located in the Eastern District of Louisiana, and upon receiving the pills, Co-Conspirator C.V. delivered a portion of the pills to Lesslie and sold the remainder on the black market.

8. Additionally, beginning in or around February 2017, and continuing through in or around September 2017, the defendant knew that Co-Conspirator C.V. referred other co-conspirators to Lesslie so that those co-conspirators could provide their PII to Lesslie to obtain fraudulent prescriptions for oxycodone so that they could then use and sell those oxycodone pills. During that time period, Co-Conspirator C.V. referred Co-Conspirator R.R. and Co-Conspirator M.R. to Lesslie. On or about April 23, 2017 and April 26, 2017, Lesslie created fraudulent prescriptions for Co-Conspirator R.R. and Co-Conspirator M.R. using the stolen prescription template from Physician 1. Co-Conspirator R.R. and Co-Conspirator M.R. filled these prescriptions at pharmacies located in the Eastern District of Louisiana, and upon receiving the pills, Co-Conspirator R.R. and Co-Conspirator M.R. delivered a portion of the pills to Lesslie and

DOJ Trial Attorney 
Defendant
Defense Counsel

sold the remainder on the black market.

9.     In total, between February 2017 and September 2017, the defendant conspired and was aided and abetted Co-conspirators in acquiring and obtaining possession of approximately 5,400 milligrams of oxycodone being not only obtained by fraud, but also being ultimately distributed and resold on the black market.

10.    In sum, the Government's evidence would prove the defendant, **STEPHANIE NICOLE FREE**, conspired to acquire and obtain possession of oxycodone by fraud, and to possess with the intent to distribute, and distribute oxycodone, a Schedule II controlled substance.

### Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **FREE**, and/or the government, and it is not a complete statement of all facts described by **FREE** to the Government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for her guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the pleas of guilty to the charged offenses by **FREE**.

The above facts come from an investigation conducted by, and would be proven at trial by credible testimony from, *inter alia*, Special Agents and forensic examiners from the Federal Bureau of Investigation and the United States Department of Health and Human Services – Office of the Inspector General, Drug Enforcement Administration, and admissible tangible exhibits in the custody of the FBI, HHS, and DEA.

DOJ Trial Attorney
Defendant
Defense Counsel

READ AND APPROVED:

*[signature]*
STEPHANIE NICOLE FREE
Defendant

*[signature]*
ANDREW J. DUFFY, ESQ.
Counsel for Defendant

*[signature]*
JARED L. HASTEN
Trial Attorney

5

DOJ Trial Attorney *[initials]*
Defendant *[initials]*
Defense Counsel *[initials]*